## J. P. JACK v. THE NATIONAL BANK OF WICHITA

(Filed September 6, 1906.)

1. **AGENCY—Corporations—Estoppel.** The authority of an officer or agent of a corporation need not necessarily be express, but it may be implied from the circumstances. Hence, a corporation is liable for the acts of a person, within the apparent scope of his authority, by holding him out to the public as its officer, or agent; or by permitting him to act as such. And under such circumstances the corporation becomes estopped to deny his authority.

2. **MUNICIPAL SECURITIES—Attributes.** Municipal warrants or obligations possess none of the attributes or qualities of commercial paper, and the holder of such warrants or obligations, even when payable to bearer or order, stands in the shoes of the payee.

3. **CHOSES IN ACTION—Assignee of—Rights.** The assignee of a mere claim, or of a chose in action stands in the shoes of the original payee, and his rights are subject to the same legal and equitable defenses as in the hands of the original payee.

4. **SAME—Two Assignees—Priority.** Where two assignments of a chose in action, for a valuable consideration, are made to different persons, the assignee who first gives notice of his claim to the debtor has the prior right, although the assignment to him is made subsequent to the time of the assignment to the other assignee.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before
James K. Beauchamp, Trial Judge.*

*Robberts & Curran,* for plaintiff in error.

*C. H. Parker,* for defendant in error.

Opinion of the court by

HAINER, J.:   There is very little, if any, dispute con-
cerning the material facts in this case.

On December 12, 1903, the Southwestern Bridge & Iron
Company filed in the office of the county clerk of Garfield
county its account against said county in the sum of $1455.

On April 12, 1904, H. H. Watkins, a stockholder and
director of the Southwestern Bridge & Iron Company repre-
senting himself to be the treasurer of said corporation, sold
and assigned said account to plaintiff in error, J. P. Jack,
the said assignment being made upon the back of the orig-
inal claim on file in the office of the county clerk.

On January 15, 1904, the Southwestern Bridge & Iron
Company, through its president, sold and assigned said claim
to the National Bank of Wichita, of Wichita, Kansas, but
neither Jack nor the board of county commissioners had any
notice of such assignment until some time in the early part
of July, 1904.

On July 26, 1904, said account was audited and allowed,
and a warrant was drawn payable to the Southwestern Bridge
& Iron Company.   Demand was made by Jack upon the
county clerk and the board of county commissioners for said
warrant, which was refused, and Jack then commenced this
action against J. F. Danely, county clerk, the board of county
commissioners of Garfield county and the Southwestern

Bridge & Iron Company, to recover possession of the same. The county clerk and the board of county commissioners answered, disclaiming any interest in said warrant, and brought it into court, to be delivered to the true owner, as might be determined by the judgment of the court. The National Bank of Wichita, by leave of court, intervened, setting up its claim to said warrant. The cause was tried to the court, without a jury, and judgment was entered for the bank for possession of the warrant, and for costs of the action, and the plaintiff in error prosecutes this appeal from said judgment.

One of the principal questions involved is whether or not a corporation can permit a person to hold himself out as its officer or agent, in a certain course of dealings, receive the benefit of the transactions had with him, and then afterwards deny his authority. And, whether persons dealing in good faith with the officers and agents of a corporation may rely upon the exercise of their apparent powers.

It appears from the evidence that Watkins was not in fact, treasurer of the bridge company, and had no express authority to make the assignment; but representing himself to be the treasurer of the company he had filed in the office of the county clerk other accounts of the company against the county, which accounts had been audited and allowed, and some of which had been sold and assigned to Jack, the plaintiff in error, and others to other persons, the company receiving the benefit of the proceeds of all of these transactions, and never at any time denying the authority of Watkins. And that relying upon the transactions he had theretofore had with Watkins as treasurer of the company, Jack purchased from him the assignment of the claim in

controversy in this case, and the proceeds were placed to the credit of the bridge company in the Citizens Bank of Enid, in which the company had an account at that time.

It is clear from the evidence that Watkins held himself out as treasurer of the company, and assumed to act as such, and that the company recognized his acts, and acquiesced in them. Moreover, Bradford, the president of the bridge company, in his letters to the plaintiff, does not question the authority of Watkins to make the assignment; but, on the contrary, he states that he will adjust the matter with the plaintiff as soon as satisfactory arrangements can be made with the bank.

In vol. 21 A. & E. Enc. Law (2 ed.) page 853, it is said:

"The authority of an officer or agent need not necessarily be express, but may be implied from circumstance.

"Thus officers of a corporation may ordinarily bind it by their acts done in its behalf in the general course of the corporate business and their own employment without the authority of any by-law or formal resolution of the board of directors.

"A corporation may render itself liable for the acts of a person by holding him out to the public as agent, or by permitting him to act as such, and thereby becoming estopped to deny his authority."

In 10 "Cyc." 938, the rule is thus stated:

"Persons dealing in good faith with the officers of a corporation may rely upon what they do or omit to do in the exercise of their apparent powers. Stating the same doctrine differently, authority will be presumed on the part of an officer of a corporation, who openly exercises a power which presupposes such authority, where such corporate acts show that the corporation must have contemplated the legal existence of such authority,"

And, again, on page 1067 of the same volume, it is said:

"If an officer of a corporation or other person assuming to have power to bind the corporation by a given contract enters into the contract for the corporation, and the corporation receives the fruits of the contract and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterwards rescinding or undoing the contract."

Applying these principles to the case under consideration, we are of the opinion that the bridge company is estopped by its acts and conduct from denying the authority of Watkins to make the assignment to Jack.

The law is well settled that municipal warrants or obligations possess none of the attributes or qualities of commercial paper. Hence, the holders of such warrants or obligations, even when payable to order or bearer, stand in the shoes of the payee; and their rights and remedies are essentially different from those of holders of negotiable paper. It is manifest that the holder of a mere claim, before it is audited and allowed, or a chose in action, has no rights superior to those of the holder of the warrant, after the same has been duly issued by the proper authorities. Manifestly, the assignee of a claim, or of a chose in action, stands in the shoes of the original payee. The rights of the holder of such a claim or chose in action are subject to the same legal and equitable defenses as in the hands of the original payee. It then follows that the bank in this case has no greater rights than the Southwestern Bridge & Iron Company, and its relief must be governed by the same legal and equitable rules.

This brings us to what we regard as the principal question involved in this case, that is, the rights of two assignees of a chose in action, for a valuable consideration, where both parties seem to be acting in good faith, and where one of two innocent parties must suffer.

The state courts on this question seem to be somewhat in conflict. Some of the courts hold that .the prior assignment is superior in right. On the other hand, the English authorities, as well as the supreme court of the United States, and the federal courts, and a number of the state courts, hold that the assignee who first gives notice to the debtor has the prior right.

The supreme court of the United States, in *Spain v. Hamilton's Administrator*, 68 U. S. 604, speaking by Mr. Justice Wayne, states the rule as follows:

"As the assignee is generally entitled to all the remedies of the assignor, so he is subject to all the equities between the assignor and his debtor. But in order to perfect his title against the debtor it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee before such notice."

In *Methven v. Staten Island Light, Heat & Power Co.*, 66 Fed. 113, the circuit court of appeals lays down this rule:

"Where two assignments of a chose in action, for a valuable consideration, are made to different persons, the assignee who first gives notice of his claim to the debtor has the prior right, though the assignment to him is later than that to the other assignee."

On page 114 of this opinion, the court uses the following language:

"The question which of different assignees of a chose in action by express assignment from the same person—the one whose assignment is prior in time, or the one who first gives notice to the debor will have the prior right, is one in respect to which there is much conflict of authority. See Story, Eq. Jur. (13th Ed.) Sec. 1047; Pom. Eq. Jur. Sec. 693. The authorities are collected in the notes of these commentators, and it will not be useful to recapitulate them. In England, since the cases of *Dearle v. Hall,* 3 Russ. 1, and *Loveridge v. Cooper, Id.* 30, it has been the settled doctrine that the assignee who first gives notice to the debtor obtains priority. This is in obedience to the general principle which requires that all transfers of property must be rendered as complete as the nature of the action will permit, in order to make them valid as against subsequent *bona fide* purchaser for a valuable consideration without notice. Many of the adjudications in this country adopt that doctrine. On the other hand, the courts of this state, as well as of many other states, hold otherwise, and pronounce in favor of the priority of the assignee who is prior in point of time, whether he had given notice to the debtor or not. It is said by Mr. Bispham

" 'The rule that, in order to protect the title of an equitable assignee as against a subsequent assignee, notice of the assignment should be given, is one that is based upon sound principle, and would seem, for many obvious reasons, to commend itself for adoption.' " Bis. Eq. 169.

These decisions of the supreme court of the United States and of the circuit court of appeals, are binding and conclusive on this court, and are decisive of this point.

The rule as announced in *Gillette & Libby et al. v. Murphy, Carroll & Brough,* in so far as it conflicts with this decision, is hereby overruled.

The conversations of Bradford, the president of the Bridge Company, with the board of county commissioners prior to the filing of the claim, in our opinion were immaterial, and did not operate as notice to the plaintiff Jack, or to the board of county commissioners of the assignment to the bank. Hence. we think that clearly under the decisions of the federal courts, the assignment to Jack is superior to the assignment to the bank.

The judgment of the district court is therefore reversed, and the cause remanded, with directions to grant a new trial.

Burford, C. J., and Burwell, J., dissenting; all the other Justices concurring.