**BARNETT, State Bank Com'r, et al. v. KENNEDY, Trustee.**

No. 27227.   April 5, 1938.

Rehearing Denied June 20, 1939.

Wesley E. Disney, Robert W. Raynolds, Charles E. Brodersen, and Francis Porta, for plaintiff in error.

John M. Goldesberry and Gerald B. Klein, for defendant in error.

RILEY, J. S. G. Kennedy, trustee for Kennedy Building Trusts, commenced this action against W. J. Barnett, State Bank Commissioner, R. M. McCool, liquidating agent for the Exchange Trust Company, and the Exchange Trust Company. Judgment was for plaintiff, and defendants appeal. The parties will be referred to as in the trial court.

Plaintiff alleged that it was the owner of an obligation denominated as a guaranteed first lien participation certificate issued by the Exchange National Company, dated August 23, 1928, in the principal sum of $403,-873.86, bearing interest at the rate of five and one-half per cent. (5½%) per annum.

By the terms of said certificate the Exchange National Company agreed and guaranteed to repurchase same from the registered holder thereof on the first day of September, 1932, and pay therefor the principal and accrued interest; that the Exchange Trust Company guaranteed the payment thereof in writing.

A copy of the instrument and the guaranty was attached to the petition and made a part thereof.

The guaranty of the Trust Company is:

"Exchange Trust Company guarantees the payment of this Participation Certificate with accrued interest at its maturity.

"Exchange Trust Company
        "By Harry C. Peiker, Vice-President.
"Attest:
        "Fred W. Steiner,
            "Assistant Secretary."

It is further alleged that said certificate, by its terms, became payable on September 1, 1932, but that by mutual agreement and consent in writing of all the parties interested, including the Exchange Trust Company, the time for payment (repurchase) was extended to September 1, 1934.

A copy of the alleged extension agreement and the consent of the Trust Company are attached, and are as follows:

"Extension of Participation Certificate.

"In consideration of One Dollar ($1.00) and other good and valuable consideration paid by the undersigned, the Exchange National Company, to the undersigned, Dr. S. G. Kennedy, Trustee for the Kennedy Building Trusts, the holder of the attached Guaranteed First Lien Participation Certificate issued by the Exchange National Company in the sum of Four Hundred Three Thousand Eight Hundred and Seventy-three and 86/100 Dollars ($403,873.86) dated August 23, 1928, and numbered Six (6), it is agreed that the time for the repurchase of said certificate by the Exchange National Company, as stated in the third paragraph thereof, shall be extended to the first day of September, 1934, at which time said Exchange National Company agrees and guarantees to repurchase the same as provided therein: and that in all other respects the said Certificate and all the terms and provisions thereof shall remain in full force and effect.

"Dated this the 24th day of September, 1932.
            "Exchange National Company
                "By H. J. Green
                    "Its V-President.
"Attest:
"By Fred W. Steiner (SEAL)
        "Its Secretary.
                "S. G. Kennedy
                "As Trustee for the Kennedy
                "Building Trusts."

And:

"The undersigned, the Exchange Trust Company, consents to the extension of time for repurchase of the Guarantied First Lien Participation Certificate described in the foregoing agreement to September 1, 1934, and guarantees the payment of said Participation Certificate with accrued interest thereon at that time.

"Exchange Trust Company<br>"By E. F. Higgins,<br>"Its President.

"(SEAL)
"Attest:
"By E. W. Deputy
  "Its Secretary."

The insolvency of the Exchange National Company and the Exchange Trust Company is alleged, and the affairs of the Trust Company are being administered by the State Bank Commissioner, and a claim had been presented to the liquidating agent and disallowed.

Howard C. Johnson, Bank Commissioner, has been substituted as defendant in the place of W. J. Barnett. The action is therefore against the Exchange Trust Company and the Bank Commissioner on the two guaranties quoted above.

The Bank Commissioner answers for himself and the Trust Company, and alleges in substance that the original guaranty and extension agreement and the guaranty in connection therewith, if signed, were null and void, and were never valid obligations of the Trust Company and not a valid claim against its assets in the hands of the Bank Commissioner, for the reason that the purported guaranties were "ultra vires" and not agreements which the Trust Company could lawfully make; that same were without consideration and not made in the usual and ordinary course of business, and that the board of directors of the Trust Company never authorized, instructed, or empowered its officers to sign or execute same.

Judgment was for plaintiff for the full amount, including interest, less certain payments made in course of liquidation of the affairs of the Exchange National Company from the securities held in trust for the benefit of the holders of participation certificates. The judgment was, in effect, to establish the claim of plaintiff as a general creditor of the Trust Company to the extent that the assets of the Exchange National Company applicable to the redemption of the participation certificates failed to fully pay the principal and interest of the certificates so guaranteed.

There are 13 assignments of error, but in their brief defendants reduce them to three propositions

(1) That the guaranty and extension thereof was ultra vires and void by reason of being executed without consideration or benefit to the Trust Company, and being a purely accommodation guaranty, the officers of the Trust Company could not legally execute same.

(2) No authority of the officers and agents of the Trust Company to execute the guaranty, and the extension thereof, is disclosed by the record.

(3) No conduct of the Exchange Trust Company, its officers, or agents such as to constitute ratification or estoppel has been shown by plaintiff.

It is first contended that a trust company has no right, power, or authority to execute an accommodation guaranty unless such authority is expressly granted by statute and by the articles of incorporation.

Subdivision 7 of section 9206, O. S. 1931, among other things, authorizes and empowers a trust company to guarantee or become surety on any bond, and: "To guarantee the principal or interest, or both, of any securities of any kind. * * *"

One of the purposes for which the Trust Company was organized, as expressed in section 7, of the articles of incorporation, was: "* * * to guarantee the principal or interest or both of any securities of any kind. * * *"

A loan and trust company cannot, ordinarily, lend its credit by guaranteeing the debt of another person or corporation, but such power may be given it by statute or charter. 7 C. J. 888.

There is, therefore, ample statutory and charter authority for guaranty of securities such as the one here involved. It cannot be said that the execution of the guaranty and extension thereof was ultra vires in the sense that it was beyond the power of the Trust Company under any and all circumstances to execute such guaranty. The question, then, is, under what circumstances may such power be exercised?

Defendants contend that in order to justify the exercise of the power there must be a consideration for the execution of the guaranty. That is, where a corporation is the guarantor, the consideration passing from the purchaser to the seller of the security, though generally held to be a suf-

412

ficient consideration to support a guaranty by an individual as guarantor, if the guaranty be executed at the time and in connection with the delivery, is not sufficient to support the execution of a guaranty by a corporation.

The substance of such contention is that there must be a consideration or benefit passing to the corporation executing the guaranty.

A number of cases are cited tending to support such contention.

Defendants brief this proposition entirely upon the assumption that there was no consideration for the guaranty, and that the guaranty was purely an accommodation.

In this case timely request was made for findings of fact and conclusions of law.

Pursuant to such request, findings of fact and conclusions of law were made by the trial court. Finding of fact No. 6 was:

"The evidence does not show whether the trust company did or did not receive any fee from the Exchange National Company for the sale of the participation certificate, or whether any consideration was received by the Exchange Trust Company from the Exchange National Company for the sale of this certificate."

Conclusion of law No. 2, after reciting the organization of the Trust Company and quoting part of section 9206, supra, concluded as follows:

"The articles of incorporation executed pursuant to this statute, also give the trust company such authority. The execution of such a guarantee, for a consideration, would not be ultra vires."

Conclusion of law No. 4 is:

"As there was no evidence as to whether the Exchange Trust Company did or did not receive a consideration from the Exchange National Company, the law presumes that it did, and the law presumes an act to be within the corporate powers of a corporation doing the act, until evidence is shown to the contrary. Therefore, as the statute gives the corporation the power to execute guaranties and the corporation received a consideration, the act of executing the guaranty was not ultra vires."

Other findings of fact and alternate conclusions of law were made, but if finding of fact No. 6, supra, is supported by the record and conclusions of law No. 2 and No. 4 are correct, the question of whether the execution of the guaranty was ultra vires is settled against the contention of defendants.

It is asserted that the findings of fact made by the court are not supported by the evidence, but defendants do not point out any evidence that the Trust Company did not receive an independent consideration from the Exchange National Company for the execution of the guaranty. We have found no such evidence. Aside from the presumption that there was such consideration stated by the trial court, it may be said that there is some evidence from which it may be reasonably inferred that there was such consideration. The record discloses that during the course of its operation the Trust Company executed many bonds and incurred contingent liabilities of various kinds. It kept what is called a contingent liability ledger in which its contingent liabilities were entered. The one in question, however, was apparently not entered in the ledger until sometime between September 7 and October 13, 1932. It was dated back, however, as of 8-23-28. On this ledger appears such liability as attachment bonds, garnishment bonds, cost bond, indemnity bond, and depository bond. The ledger contained the date and the nature of the instrument or bond. Each was given a number which was entered in a column designated for that purpose, another for the amount of the obligation, one for the date when released, and a column for the entry of the premium charged, another for the date when paid. After many of the items no amount of premium was shown. It was explained that in many cases where money was deposited and held by the Trust Company pending a decision of who was entitled thereto, no premium was charged, because the Trust Company had the use of the money. Other charges, however, such as attachment bonds, were also made when the amount of premium charged, if any, was not shown on this ledger.

One witness for defendants, Mr. Fred Steiner, who signed the original certificate as secretary of the Exchange National Company, and also attested the original guaranty as assistant secretary of the Exchange Trust Company, testified in part:

"Q. Now, can you tell the court the manner in which these contingent liabilities were handled from the inception—from the time they were first assumed until they were disposed of? A. Well, that was one of our sources of income, and we, naturally, made an effort to collect a premium in every case, where we were entitled to it. Q. It appears there in specific cases that premiums were not charged. Do you know how that was and why it was? A. Well, in some cases, we had the use of the funds in the banking

department, and we thought we had derived enough money from lending the money to more than offset the premium. Q. Would you always make a charge, at the time you assumed the liability, or would you know how much to charge, in every case? A. No, we would not, because we would not know how long the money would be in the depository. Q. Depository bonds, how would you charge for them? A. We would bill for the full amount and let it run along until we could tell how much it would be. Sometimes we collected it all and then returned part of it. Q. I notice where you made a bond for the Exchange National Bank, apparently for litigation, in which no premium was charged. Do you have any recollection of that? A. If we didn't get paid for it, it was an oversight, because we billed the bank like any other outside party. Q. Well, do you mean by that to tell the court it was your purpose to bill everybody on these contingent liabilities, unless you had the use of the money? A. Yes, sir. Q. Was that your practice? A. Yes, sir. Q. Did you have authority, as an officer of the company, to assume a contingent liability, gratis? Mr. Goldesberry: We object to that as not being within his power, incompetent, irrelevant and immaterial. The Court: He may answer. The Witness: No, sir. * * * Q. When you collected for these premiums, if you did collect, that would appear in your general account? A. They will show up in the income account of the Trust Company. This (indicating) was just a collateral record. The income account would show what we collected on all these. Q. Are there any in here you might have collected and it not be entered on here at all? A. As I say, this is just a collateral record. Q. It would be an interminable job to go through and find all these items? A. No, sir, it would not be hard, because there is a special account showing funds collected on indemnity and surety bonds. You could go right down the line. Q. How long would it take you to do that? A. A day or two. * * * Q. Mr. Steiner, what records of the Trust Company, or what records, to your knowledge would we find showing the payment of premiums on these contingent liabilities, where the contingent liability record shows none were received? A. The income ledger. Q. What? A. The income ledger."

The income ledger of the Trust Company was never produced in evidence.

From the above evidence it may be fairly inferred that if the income ledger had been produced, it might have shown a premium paid for the execution of the guaranty.

Certainly we cannot say that finding of fact No. 6, supra, is not supported by the record. Said finding of fact must stand as a fact established by the evidence.

Then there was no evidence that the Trust Company received no consideration for the execution of the guaranty. Where the guaranty is such that a consideration is presumed, the burden is on defendant under a plea of want of consideration to prove his plea of no consideration. 28 C. J. 106.

Where a guaranty is in writing, the writing itself imports a consideration. Security, etc., Bank v. Seitz (Cal. App.) 185 P. 188.

Furthermore, when the statute gave the Trust Company power to guarantee the principal and interest, or both, of any securities of any kind, without limitation or restriction, and the Trust Company accepted the grant of power and incorporated a like provision in its articles of incorporation, the Trust Company was thereby authorized to become guarantor to the same extent as an individual and subject to the general law of guaranty. Section 9602, O. S. 1931, was then in force and had been for many years. It provides:

"Where a guaranty is entered into at the same time and with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation, a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation."

In St. L. & S. F. Ry. Co. v. Union Construction Co., 75 Okla. 121, 182 P. 241, it is held:

"When a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation, a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation. Rev. Laws 1910, sec. 1028."

Section 1028, Rev. Laws 1910, is the same as section 9602, O. S. 1931.

The uncontradicted evidence is, and the trial court in substance found, that the purchase of and payment for the participation certificate and the execution of the original guaranty was all one transaction, made at the same time, and that the execution of the guaranty was expressly required by plaintiff before he would purchase the certificate. Therefore, under the uncontradicted evidence and the plain provisions of law, no consideration other than the payment of the purchase price of the certificate was required.

Under the second proposition, defendants contend that no authority of the officers and agents of the Trust Company to execute the guaranty is shown by the record.

·The by-laws of the company were in evidence. They specifically provide for the offices of president, vice president, secretary and assistant secretaries, and specifically authorize and empower such officers to execute instruments on behalf of the company. The president is specifically authorized by section 5, art. 4, of the by-laws, "for the company as principal, or coprincipal, or surety or cosurety, to execute all guarantees, specialties, and bonds * * *, to any individual, and to cause the seal of the company to be attached thereto, and on behalf of the company to acknowledge and deliver the same." Similar powers are granted to the vice president, whether the president be present or not. The secretary is given custody of the seal of the company and power to attest the same when lawfully affixed to any instrument. Assistant secretaries subject to the control of the secretary and others having precedence in their order are given the power to exercise the rights, powers, and duties of the secretary, whether the secretary be absent or present and in the actual performance of his duties. This, of course, is ample authority for the execution of all guarantees which the company might, under the statute and charter, lawfully make.

Section 5, supra, also provides:

"The president shall superintend and conduct the business of the company, subject to the control of the board of directors and executive committee."

Where the president is given power as general manager of the business with full direction and charge thereof, he has prima facie power to make any contract or do any act which the directors could authorize or ratify, unless special limitations are put upon such power of which the party dealing with him has notice, unless the power to do the particular act is expressly given to another officer or agent. 14 C. J. 358.

In Stevens v. Selma Fruit Co. (Cal. App.) 123 P. 212, it is said:

"A corporation is an artificial person, and, where it is organized for commercial purposes, its president or general manager or whoever may be given immediate direction or control of its affairs is its agent, empowered, unless expressly restricted to the performance of certain specified acts, to do anything which naturally and ordinarily has to be done to carry out its paramount purposes."

The by-laws having given the president, and extended the powers of the president to the several vice presidents, the power to superintend and conduct the business of the corporation, subject to the control of the board of directors, and there being no showing of any restriction by the board of directors or executive committee upon the power of the president to act in the matter of execution of guarantees such as were within the corporate power of the corporation to make, there would seem ample power granted by the by-laws of the corporation for the officers to execute the guarantees in question. No express authorization by the board of directors was necessary.

The conclusions we have reached render it unnecessary to consider the third proposition, going to the question of ratification or estoppel.

The judgment is affirmed.

OSBORN, C. J., and WELCH, CORN, GIBSON, and HURST, JJ., concur. PHELPS, J., not participating. BAYLESS, V. C. J., and DAVISON, J., absent.

Supplemental Opinion on Rehearing.

PER CURIAM. Our attention is now called to an item included in the judgment of $42,763.30 as interest computed from June 29, 1933, the date the Trust Company became insolvent, to the date of the judgment and included therein. It is asserted that allowance of interest against the Trust Company after it became insolvent and its affairs were placed in the hands of the State Bank Commissioner is contrary to and in conflict with decisions of this court, and constitutes an improper allowance after the date of insolvency.

This matter was not specifically presented to the trial court nor was it specifically urged or separately presented in the original brief.

Ordinarily we would consider the question as coming too late, but since the question of allowance of interest to this particular creditor vitally affects the interest of other unsecured creditors, justice demands that the question be given proper consideration.

It is conceded that the judgment in this case amounts to no more than to establish the claim of plaintiff as an ordinary unsecured creditor to be paid as other unsecured claims, and upon the same basis.

Defendants contend that if the assets of the company are insufficient to pay all other common creditors in full, plaintiff should be paid pro rata along with other common creditors.

Examination of the authorities cited by both parties on the question will disclose that the general rule of law supports the contention of plaintiff in error herein. The question appears to be settled in this juris-

diction in Re American Bank & Trust Co. of Ardmore, 176 Okla. 202, 55 P.2d 470. Therein the general rule is recognized as being:

"As against the assets of insolvent bank, generally interest on a claim is calculated only to the date of suspension and the vesting of title of the assets in the receiver, unless there are surplus assets after paying the indebtedness. As between the creditors themselves, some cases hold that no interest is allowed upon their respective claims, whether preferred or unpreferred, after the appointment of a receiver. * * *

"Interest at the contract rate should be credited on the accounts of creditors to the date the receiver took possession of the bank's assets and thereafter interest is not allowable, as between the creditors themselves, but is allowable against the bank, and if the assets are sufficient for the payment of the principal indebtedness as established at the time the receiver took possession, interest should be paid at the legal rate before distribution of the surplus to the stockholders."

There are authorities to the contrary, but they are said to apply the "minority rule."

Some cases are cited allowing interest after insolvency, but a number of them are cases where it appears that the assets were more than sufficient to pay all claims in full without interest.

In this case there is no showing that the assets of the Trust Company are sufficient to pay all claims in full without interest. If such were the case, then all common creditors would apparently be entitled to interest before payment could be made to the stockholders.

In the absence of a showing of funds sufficient to pay all other common creditors interest on their claims after insolvency, it was error to allow plaintiff interest on his claim after the affairs of the Trust Company were placed in the hands of the State Bank Commissioner. Interest at the contract rate should have been computed down to June 29, 1933, the date of insolvency and no more.

The judgment of the trial court should be, and is hereby, modified to that extent. In all other respects we adhere to the former opinion. The cause is remanded, with directions to enter judgment in accordance with the views herein expressed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. DANNER, J., dissents. CORN, J., absent.