## VICTORY INV. CORPORATION v. MUSKOGEE ELECTRIC TRACTION CO.

### No. 3070.

Circuit Court of Appeals, Tenth Circuit.

April 25, 1945.

Rehearing Denied Oct. 1, 1945.

890

891

Byron Lamun and Tom Garrett, both of Oklahoma City, Okl., for appellant.

W. R. Banker, of Muskogee, Okl. (A. Camp Bonds, of Muskogee, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This is an action brought by Victory Investment Corporation against Muskogee Electric Traction Company to recover judgment on certain corporate bonds. The cause was submitted to the court without the intervention of a jury. The court determined that the action was barred by the statute of limitations and entered judgment for the defendant. Plaintiff appealed. For convenience the parties will be referred to as they appeared in the trial court.

The first question presented is whether certain statements in writing were sufficient to interrupt the statute of limitations and start it running anew. Section 95, Title 12, O.S.1941, provides among other things that a civil action upon a contract, agreement, or promise in writing shall be begun within five years after the cause of action shall have accrued, and not afterwards. And section 101 provides that in any case founded on contract, where an acknowledgment of an existing liability, debt, or claim shall have been made in writing, signed by the person to be charged thereby, the action may be brought within the period prescribed for an action of that kind, after such acknowledgment. The acknowledgment need not be in any particular form. It meets the requirements of the statute if it amounts to a distinct, direct, and unequivocal admission of a then existing debt for which the person signing the writing is liable. Olatmanns v. Glenn, 78 Okl. 70, 188 P. 886; Baker v. Christy, 172 Okl. 32, 44 P.2d 16; Noble v. Bodovitz, 175 Okl. 432, 52 P.2d 1046; Vernon National Farm Loan Association v. Helf, 191 Okl. 292, 129 P.2d 845; Stone v. Smoot, 191 Okl. 512, 131 P.2d 85, 143 A.L.R. 1426; First National Bank of Harrah v. Wright, 192 Okl. 182, 135 P.2d 344.

It is not essential that the acknowledgment be expressly stated in such words as "I acknowledge this as an existing debt" or "I am now liable on these bonds". It is enough if language is used from which the acknowledgment may be fairly inferred. Baker v. Christy, supra; Stone v. Smoot, supra. Neither is it obligatory that the acknowledgment be found in a single instrument. It may be gathered from several writings between the parties if they have reference to the subject matter and are so connected with each other that they may fairly be said to constitute one paper relating to the contract. Markovitch v. McGowan, 183 Okl. 272, 81 P.2d 311; Vernon National Farm Loan Association v. Helf, supra. And while the writing or writings relied upon to constitute an acknowledgment must refer with reasonable certainty to the obligation in suit, neither the amount of the debt nor its exact nature need be definitely stated. Stone v. Smoot, supra.

The bonds issued by the defendant, of which those in suit are a part, were secured at the outset by a mortgage to a trustee. They recite that they are secured by the mortgage, and they expressly make reference to the mortgage for a statement

of the nature and extent of the terms and conditions upon which they are issued and held. And the mortgage provides that the defendant will annually send to the trustee a statement of its operations, which statement shall include among other things its gross income and the sources thereof, its operating expenses with the respective amounts charged to the different distributive groups and cost of betterments, extensions and improvements made, and any other data which the trustee may require. Pursuant to the provision in the mortgage, statements were from time to time submitted to the trustee. Among others, statements were submitted in the years 1937, 1938, 1939, and 1940. The last one was submitted on December 1, 1940, and the suit was begun less than five years thereafter. The statements were substantially identical in form, and they reflected operating revenue, operating expense, and other pertinent data. They contained a trial balance and a general balance sheet reflecting assets and liabilities. The general trial balance reflected as a liability an item denominated "Matured Funded Debt Unpaid", the general balance sheet reflected as a current liability an item denominated in like manner, and they each reflected similarly items denominated "Matured Interest Unpaid" and "Matured 2% Tax on Bonds", respectively. In each instance the amount was stated. The total bonds issued and the items in the statements denominated "Matured Funded Debt Unpaid" coincided in respect to amount, and it is not suggested that the defendant had any other or different outstanding debt or obligation of that sum, exact or approximate. When the amount of the bonds issued, the provision in the bonds making reference to the mortgage, the provision in the mortgage relating to the submission of statements to the trustee, the kind of statements submitted, the time of their submission, the circumstances under which they were submitted, and the amount of the items denominated "Matured Funded Debt Unpaid" are considered together, it appears with the requisite certainty that the items referred to the bonds. In other words, the bonds were referred to at one place in the statements as a liability and at another place as a current liability. And no condition or limitation was attached. That was the equivalent of the defendant submitting to the trustee a written statement signed by it saying "These bonds are my current

liability". And we think it constituted a distinct, direct, and unequivocal acknowledgment of a present debt, within the meaning of the statute, and therefore was sufficient in substance to interrupt the statute and start it running anew. Cf. Baker v. Christy, supra; Markovitch v. McGowan, supra; First National Bank of Harrah v. Wright, supra; Bank of America National Trust & Savings Ass'n v. Hunter, 8 Cal.2d 592, 67 P.2d 99.

The statute requires that the acknowledgment be in writing and signed by the party to be charged thereby. The statements submitted to the trustee were typewritten and they did not bear any signature. But each was accompanied by a letter of transmittal. The letter made specific reference to the statement being transmitted, and it was signed by the general manager of the defendant. Insofar as the requirement of the statute that the acknowledgment be signed is concerned, the signature to the letters sufficed in that respect, as both are to be considered together as a single writing in determining whether there was a signed acknowledgment, within the meaning of the statute. Searles v. Gonzalez, 191 Cal. 426, 216 P. 1003, 28 A.L.R. 78; Cf. Bayne v. Wiggins, 139 U.S. 210, 11 S.Ct. 521, 35 L.Ed. 144; McLendon v. Ebbs, 173 N.C. 603, 92 S.E. 498; Black v. Hanz, Tex.Civ.App., 146 S.W. 309.

The several statements were submitted to the trustee, not the owners of the bonds. But the mortgage provided that they should be submitted to the trustee. The trustee acted for the bondholders in respect of their submission and receipt. First National Bank of Boston v. Proctor, 1 Cir., 40 F.2d 841, certiorari denied, 282 U.S. 863, 51 S.Ct. 36, 75 L.Ed. 764. And an acknowledgment, sufficient in substance and delivered to the agent of the creditor, effectively tolls the statute. Olatmanns v. Glenn, supra; Stone v. Smoot, supra.

But the defendant contends that the relation of principal and agent between the bondholders and the trustee was limited and defined in the mortgage; that the mortgage nowhere provides for the submission to the trustee of statements of assets and liabilities; and that therefore even though it be determined that the statements submitted reflected the bonds as a current liability they did not constitute an acknowledgment which interrupted the

**893**

statute and started it running anew. The cardinal rule in the interpretation of contracts is to ascertain the mutual intention of the parties at the time their minds met upon the terms of the agreement and to give effect to that intention if it can be done without doing violence to the language used. Texas Co. v. Adelman, 186 Okl. 663, 99 P.2d 874, 127 A.L.R. 945; New York Casualty Co. v. Sinclair Refining Co., 10 Cir., 108 F.2d 65. And the subsequent acts and conduct of the parties may be considered in arriving at the intention. D'Yarmett v. School District No. 27 Canadian County, 72 Okl. 124, 179 P. 20; Gladys Belle Oil Co. v. Clark, 147 Okl. 211, 296 P. 461; Washoma Petroleum Co. v. Eason Oil Co., 173 Okl. 430, 49 P.2d 709; McDowell v. Droz, 179 Okl. 119, 64 P.2d 1210. Here the mortgage provides for the submission of statements. It further provides that the statements shall include *among other things* gross income and the sources thereof, operating expenses with the respective amounts charged to the different groups and cost of betterments, extensions and improvements made, *and any other data which the trustee may require.* The record is silent in respect to whether the trustee required the inclusion in the statements of the assets and liabilities. It may have done so. In any event, extending over a period of several years, the assets and liabilities, including the bonds, were consistently reflected in the statements. The defendant prepared the statements, the trustee accepted them, and the bondholders acquiesced. No question was raised by any one in interest. Such acts and conduct indicate persuasively the intention of the parties as well as the interpretation which they placed upon the pivotal provision in their trust agreement. And it is not in conflict with the language used in such provision. We fail to find any basis for concluding that the submission to the trustee of statements reflecting the assets and liabilities, including the bonds, went beyond the limits of the agency and therefore did not constitute an effective acknowledgment.

The remaining question we are called upon to determine is whether the general manager of the defendant had authority to execute on behalf of the defendant an acknowledgment which operated to toll the statute. The articles of incorporation of the defendant provide that its af-

fairs and business shall be conducted and controlled by its board of directors, and its by-laws provide that all written contracts entered into on behalf of the corporation shall be executed by the president or vice-president and attested by the secretary or treasurer. No provision is made in the by-laws for a general manager, but provision is made under which the board of directors may determine the duties and fix the compensation of any officer, agent, or employee. R. H. Alexander assumed the title and duties of general manager in 1932, under authority of a letter written by the president; and he has since continued to act, subject to the direction of the board of directors. He has exercised complete control and management of the affairs of the corporation, has executed all chattel mortgages, conditional sales contracts, and agreements required for the proper conduct of the ordinary business and affairs of the corporation, and has effected the settlement of claims arising from the operation of the transportation system owned by the corporation. None of his acts has been repudiated by the corporation. In 1941, the board of directors by formal action expressly authorized him to execute conveyances, releases, or other written instruments necessary to be used by the company, with the same force and effect as though executed by the president or vice-president; and all conveyances previously executed by him were approved the same as though he had authorization to act at the time. The Supreme Court of Oklahoma has held that the president of a corporation who is given power as general manager under by-laws to superintend and conduct the business of the corporation, subject to the control of the board of directors and executive committee, has prima facie power to make contracts or perform any other acts which the board of directors could authorize or ratify, in the absence of a showing of restriction of such power by the board of directors or executive committee. Barnett v. Kennedy, 185 Okl. 409, 92 P.2d 963. And the authority of an officer or agent of a corporation need not necessarily be express. It may be implied from the circumstances. Jack v. National Bank of Wichita, 17 Okl. 430, 89 P. 219; Ardmore Hotel Co. v. J. B. Klein Iron & Foundry Co., 104 Okl. 125, 230 P. 734. Here, the action is not on the acknowledgment. It is on the

bonds. York v. Long, 186 Okl. 643, 99 P.2d 1041. We entertain no doubt that the general manager had authority to execute the acknowledgment. Cf. Barnett v. Kennedy, supra.

The judgment is reversed and the cause remanded.