HAZZARD v. GENERAL TIRE & RUBBER CO.

No. 27404.    Oct. 19, 1937.

Rehearing Denied Dec. 7, 1937.

Application for Leave to File Second Petition for Rehearing Denied Jan. 25, 1938.

T. R. Wise and S. P. Freeling, for plaintiff in error.

Clearman & Ellis, for defendant in error.

PHELPS, J. R. M. Ingram was in the retail tire business. He had been buying the tires which he sold to the public from the plaintiff, General Tire & Rubber Company, on open account. He was told by the representatives of that company that if he would obtain a written guaranty of payment, the company would extend him a larger credit. Accordingly, his sister-in-law, defendant, executed to the company her

written guaranty, wherein she guaranteed payment of 'all bills or indebtedness due or to become due, including payment of future notes, except that she limited her liability to $2,500. Several months later Mr. Ingram executed his demand note to plaintiff for $2,250, for tires bought from plaintiff, and at the same time entered into a written contract with the plaintiff governing the method of payment of the note and their future business relations, which contract is copied below. Mr. Ingram later went out of business, having reduced the balance due on the note to $1,132.62, for which amount the plaintiff sued and recovered a verdict and judgment against the defendant guarantor, who appeals.

The main contention is that when Ingram and the plaintiff entered into the written contract, without the knowledge or consent of the defendant guarantor, it altered the original obligation of the principal, Ingram, and thus exonerated the guarantor, by force of the familiar rule of law to that effect as stated in section 9617, O. S. 1931. Whether the facts of the case bring it within that rule and the reason for the rule is the principal question in this appeal. That question can best be answered by considering the events and their significance in chronological order:

First, on the date of the guaranty no obligation was owing from Ingram to the plaintiff, unless Ingram owed the plaintiff a balance for tires which he had bought before that date on open account, and the record does not inform us on that question. The relationship of Ingram and the plaintiff was, if anything, simply that of debtor and creditor.

But Ingram wanted 'a larger credit. The plaintiff would not give it to him unless he would obtain a guaranty. Accordingly, he went to the defendant for that purpose, and she testified at the trial that the reason she made the guaranty was to enable her brother-in-law, Ingram, "to get a better deal out of it," so that it is apparent both by her own testimony and from the face of the guaranty that what she guaranteed was not so much the performance of any obligation then owing by Ingram as obligations to be created in the future. This served as the very basis and reason for obtaining the guaranty, as follows:

"To General Tire & Rubber Company,
   "Akron, Ohio.

"In consideration of your having, at our request, consented to manufacture and sell goods and merchandise to R. M. Ingram, of Brownwood, Texas, we and each of us, jointly and severally, hereby guarantee to you the payment of such sum or sums of money as may be due, or at any time or times hereafter become due to you from said R. M. Ingram, in respect of goods and merchandise so manufactured or sold, and you are at liberty without notice to us to give said R. M. Ingram, at any time, and from time to time, such extension or extensions of credit as you may think proper, evidenced either by promissory notes, or otherwise, and our guarantee here made shall also extend to guaranteeing payment of such notes so taken by you from said R. M. Ingram and to such extension or extensions in other forms as you may give, but our liability is not at any time to exceed twenty-five hundred dollars ($2,500.) for which this instrument shall be continuing guarantee, although the credit extended by you may have exceeded that amount. We or each of us hereby waive notice of the acceptance of this guarantee.

                    "Bell Hazzard."

It is conceded that pursuant to the above instrument the note and contract now in question were made, or that the note would not have been accepted but for such guaranty. The note was for an amount less than the limitation provided in the guaranty, and it was given for tires purchased in the same course of business. However, it is the written contract which was entered into between plaintiff and Ingram, contemporaneously with the note, which defendant contends discharged her from further liability. The contract is as follows:

"General Tire & Rubber Company,
   "Akron, Ohio.

"Gentlemen:

"In consideration of your extending to us credit in the amount of Two Thousand two hundred fifty ($2,250.00) Dollars, evidenced by our note of even date, we agree to purchase from you at this time merchandise in the amount of Two Thousand Two Hundred Fifty Dollars, and to carry in stock at all times merchandise of your manufacture, the value of which shall be equal to the amount of our indebtedness to you under said note. All said merchandise of your manufacture to be held by us at all times as security for any amount due you. We agree that the note above mentioned shall be a demand note in the amount above

specified, bearing interest at 6 per cent. per annum, which note we agree to reduce at the rate of _____ Dollars per quarter, plus interest on April 10, 1933. I will agree to enter on agreement to reduce said note on a monthly basis which will be satisfactory to both parties.

"We agree that in the event we fail to purchase Ten Thousand Dollars worth of your products per year or an amount thereunder which is acceptable to you during the time that this note is not fully paid, that you shall have the right to immediately demand payment of the amount due on said note.

"We agree that you may demand payment of the entire amount of said note if you are not entirely satisfied as to our financial responsibility whether such responsibility shall have changed or remains the same as on the date of this letter.

"If you should demand payment of the demand note in accordance with the three preceding paragraphs we reserve the right to return sufficient merchandise of your manufacture which we have on hand and which is in first class salable condition as determined by you, to be credited against the amount outstanding on the demand note and you are likewise to have the privilege of requiring us to return sufficient merchandise of your manufacture as you determine to be in first class salable condition to pay any indebtedness due you.

"This letter is signed in duplicate, one copy for your files and one copy to be returned with your acceptance thereon.

"Yours very truly,

"R. M. Ingram."

The substance of the above contract, as summarized in the brief of plaintiff in error, is that Ingram agreed, among other things: (1) To carry in stock at all times merchandise manufactured by plaintiff up to the amount of his indebtedness to plaintiff; (2) that he would hold said merchandise as security for the amount due plaintiff; (3) that while the note was a demand note, it was to be retired by periodical payments to be agreed upon between them; but (4) if Ingram should fail to purchase $10,000 worth of products per year from plaintiff, or a lesser amount which would be acceptable to the company, then the plaintiff company would have the right to demand payment of the entire amount remaining due on the note.

We fail to discover any provision or effect of this contract which should relieve the defendant of the particular guaranty which she executed. Her guaranty was a continuing one, and covered future indebtedness by note as well as on open account.

The first two provisions summarized above merely had the effect of further securing the debt, plus the further possible effect of resolving the situation into one whereunder Ingram was, for all practical purposes, in so far as he alone was concerned, holding the goods on consignment for sale. This should have worked for the benefit of the guarantor as well as the plaintiff, and the record reveals that it did have that effect, for it shows that Ingram returned a quantity of tires to plaintiff and that the balance on the note was reduced accordingly. Such provisions were not at cross-purposes with the guaranty and could not work a detriment to the guarantor.

The third and fourth provisions as summarized above relate, not to the note indebtedness, but to the manner of paying such indebtedness. There is no provision in the contract requiring Ingram to purchase $10,000 worth of products per year from the plaintiff. It is manifest that the parties by this instrument contemplated a reduction of the amount due on the demand note by quarterly or monthly payments, but that they failed to make the amounts of the installments definite and certain. Construing the whole contract together, we think it reasonable to assume that the intention of the parties was that the periodic payments should continue regardless of whether Ingram should purchase $10,000 worth of goods per year, but that if he should purchase less than that amount in any particular year, the plaintiff could then declare the entire balance immediately due and payable. It is obvious that this related merely to the manner of payment of the note and that it did not transgress the scope of the guaranty, which would have authorized a much heavier burden on Ingram, namely, a demand note payable immediately in its full sum. The essence of the guaranty was the promise that Ingram would pay whatever future indebtedness he might incur with the company, for goods purchased, up to the limit of the guaranty. The company did not seek to compel Ingram to take $10,000 worth of goods per year, and could not successfully have done so, for the contract does not so provide.

This is a continuing guaranty, and it is

broad and general in its scope. It is not that kind of guaranty which is collateral to some present existing contract between the principal and the creditor, so that the two must be construed together and the limitations found in one be construed in connection with the other. The present guaranty is general and continuing in nature, and was purposely fashioned and intended to cover future contractual transactions between the creditor and the principal, creating indebtedness of the latter. A continuing guaranty is one which is not limited to a particular or specific transaction, but which is intended to cover future transactions. 12 R. C. L. 1061. Such we must hold was the purpose and intent evidenced by the instrument in the instant case.

Defendant also complains of the admission of certain testimony over her objection. Shortly after the guaranty was signed by the defendant, Ingram rented space in the store of one Glasscock and changed the name of his business to "Ingram-Glasscock Tire Company." One of the defenses attempted was that the plaintiff thereafter furnished material, not to Ingram, but to the partnership of Ingram-Glasscock Tire Company, and that thus the guarantor was exonerated by change of principal. The defendant complains that the trial court admitted in evidence the testimony of plaintiff's credit manager to the effect that he had been informed by a credit rating agency that no such partnership existed, and that the name of Ingram-Glasscock Tire Company was merely a trade-name for R. M. Ingram individually. The defendant is correct in her assertion that such testimony was hearsay and was not admissible. However, it is uncontroverted and is virtually conceded by the defendant that there was no such partnership, but that the aforesaid hearsay testimony was in fact true. Nowhere in defendant's brief is it contended that there is any evidence which would have supported a finding to the effect that Ingram merged his business identity into that of a partnership. In view of those circumstances, the admission of such testimony could not have harmed the defendant, since the evidence on that question was not sufficient to form an issue.

Another objection is raised concerning the giving of a certain instruction and the re-

fusing of another. The merit of that proposition is determined entirely by the soundness of the other contentions hereinbefore considered, and it is therefore unnecessary to discuss it.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and HURST, JJ., concur.