**RABON et al. v. PUTNAM et al.**

No. 3436.

Circuit Court of Appeals, Tenth Circuit.

Oct. 13, 1947.

Rehearing Denied Nov. 15, 1947.

PHILLIPS, Circuit Judge, dissenting.

———◆———

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, Okl., for appellants.

Allen McReynolds, of Carthage, Mo., and Edmund Lashley, of Tulsa, Okl. (Hal F. Rambo, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellees sued one Curd, as maker, and appellants, Rabon and Simon, as guarantors, of a promissory note in the amount of $37,000, payable to one Rambo and endorsed by him without recourse to appellees. Appellants pleaded the unlawful filling up of the blanks in the note, total failure of consideration, partial failure of consideration, fraudulent procurement, and alteration of the original obligation. The trial court gave judgment for appellees and on appeal, appellants reassert the defenses tendered in the trial court.

Appellees were the owners of preferred stock in the Producers Lumber Company, having a face value of $110,000. Curd, as President and owner of 90 per cent of the common stock, desired to purchase the preferred stock, and the appellees offered to sell the same for $37,000. When Curd was unable to raise the money, he was informed that a note for the agreed amount, due in five years would be acceptable, provided he secured a satisfactory guarantor or guarantors. A promissory note was accordingly prepared in the office of Hal F. Rambo, an attorney who apparently was representing both parties. The note was dated July 1, 1940, due in five years from date, payable to Rambo at his office in Tulsa, Oklahoma, with interest at 6% payable semi-annually, and attorney fee of 10% if collected by an attorney. Immediately below the signature of the maker and on the face of the note appeared the following: "For value received we, the undersigned, guarantee the payment of this note to the extent set forth opposite our respective names, and if at the maturity of this note the maker does not pay the full principal and interest then due thereon, the undersigned will, on demand of the holder hereof, pay the said holder the sum set opposite our signatures; provided, that in no event shall any guarantor be liable to the holder for more than his pro rata share of the unpaid principal and interest due on this note at the maturity thereof." Then followed seven blank lines for the signatures of the guarantors and the amount of their liability to be set out or filled in opposite their signatures.

Curd induced Rabon and Simon to sign the guaranty, and later submitted the note, with the sum of $18,500.00 set opposite the guarantors' respective names, to the appellees in the office of Rambo. The note was payable to Rambo, as nominal payee and by him endorsed without recourse to the order of the appellees, who accepted it as executed in payment of the stock.

In answer to interrogatories, the jury found from controverted evidence that Curd orally agreed with Rabon and Simon at the time the guaranty contract was signed that he would procure additional guarantors, and that the amount he would insert for which each would be separately liable would be $4,500 or less; that after the signatures of other guarantors had been obtained, and the note completed, it would be exhibited to them before delivery to the payee; that the figures of $18,500, appear-

ing opposite each name on the note were not filled in at the time the note was signed; that the note was payable to Hal F. Rambo at his office at Tulsa, Oklahoma, at the time it was signed by Rabon and Simon.

Section 34, Title 48 O.S.A., Section 14, N. I.L., provides: "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

In accordance with the prevailing rule in Oklahoma the trial court held that the appellees, as actual payees of the note, were not holders in due course. See Edwards v. J. I. Case Co., 187 Okl. 244, 102 P.2d 120; First National Bank of Alex v. Godwin, 173 Okl. 169, 47 P.2d 116; First National Bank of Cushing v. Woods, 172 Okl. 645, 46 P. 2d 565. And, if therefore the appellants be considered as co-makers or endorsers of the note they were not liable thereunder, because under the established facts the blank spaces in the note were not filled up strictly in accordance with the understanding between the maker and appellants, as required by Section 34, supra. The court was of the opinion, however, that the obligation signed by the appellants, was separate and distinct from the note itself, and constituted an independent contract. Treating the action as one on a contract of guaranty, not upon the note, the trial court held the defenses under Section 34 unavailable, because as guarantors they did not become parties to the instrument. It further held that the appellees being bona fide purchasers of the note without notice of the agreement between the maker and the guarantors, such agreement was not a defense to the guaranty.

Manifestly, to be entitled to the defenses under Section 34, supra, Rabon and Simon must have become parties to the note prior to its completion. They were not makers, co-makers, drawers, or acceptors and we need only consider whether by affixing their signatures to the instrument in the manner shown they became endorsers thereof, hence parties thereto.

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Section 144, Title 48 O.S.A., Section 63 N.I.L.

Thus, it has been held that a guaranty when accompanied by words usually related to the rights of an endorser, such as waiver of presentment, notice of protest and dishonor, the contract will be construed as an endorsement with the enlarged liability of a guarantor. Mangold & Glandt Bank v. Utterback, 54 Okl. 655, 160 P. 713, L.R.A.1917B, 364; First National Bank v. Cummings, 69 Okl. 216, 171 P. 862, L.R.A. 1918D, 1099; Delk v. City National Bank of Duncan, 85 Okl. 238, 205 P. 753; See Annotations 21 A.L.R. p. 1375, 33 A.L.R. p. 97 and 46 A.L.R. p. 1516, and cases cited therein. Other courts hold that the use of the word "guarantee" clearly indicates the nature of the obligation and a contract using words of guaranty will be so treated, although it may also contain words usually related to the obligations of an endorser. First National Bank, Shenandoah v. Drake, 185 Iowa 879, 171 N.W. 115; Bank of Italy National Trust & Savings Ass'n v. Symmes, 118 Cal.App. 716, 5 P.2d 956; Northern State Bank v. Bellamy, 19 N.D. 509, 125 N.W. 888, 31 L.R.A.,N.S., 149; Noble v. Beeman-Spaulding-Woodward Co., 65 Or. 93, 131 P. 1006, 46 L.R.A.,N.S., 162. But see also Douglas v. Rumelin, 125 Or. 261, 264 P. 852, 266 P. 624; Id., 130 Or. 375, 280 P. 329. When, as here, no words peculiar to the liability of an endorser are used in the guaranty and the obligation is to answer for the default of another, the

courts recognize the separateness of the note and guaranty. Square Butte State Bank v. Ballard, 64 Mont. 554, 210 P. 889; Walker v. Griffin, 107 Okl. 107, 232 P. 65; Vol. 8, Amer.Juris. Bills and Notes, Sec. 452, p. 204, Britton on Bills and Notes, pp. 236 and 238, Bigelow, the Law of Bills, Notes and Checks, 3rd Ed., 1928, p. 348.

■ In our case, Rabon and Simon, guaranteed the payment of the note only to the extent set opposite their respective names and promised to pay their pro rata share at maturity only if the maker did not pay the full principal and interest. In these circumstances, the word "guarantee" clearly denoted the nature of the obligation, and the capacity in which the obligors intended to be bound. The obligation was separate and distinct from the note. Pavlantos v. Garoufalis, 10 Cir., 89 F.2d 203; Howell v. Commissioner of Internal Revenue, 8 Cir., 69 F.2d 447; Peterson v. Miller Rubber Co. of N Y., 8 Cir., 24 F.2d 59; Northern State Bank v. Bellamy, supra; National Security & Trust Co. v. Niles Invisible Door Check Co., 222 Mich. 510, 193 N.W. 199; Swenson v. Stoltz, 36 Wash. 318, 78 P. 999, 2 Ann.Cas. 504; Holm v. Jamieson, 173 Ill. 295, 50 N.E. 702, 45 L.R. A. 846; Nolan v. Sloan, 305 Ill.App. 71, 26 N.E.2d 990; Daniels Negotiable Instruments, 7th Ed. Vol. 3, 1618. Camp v. Dallas National Bank, Tex.Civ.App., 21 S.W. 2d 104, Id., Tex.Com.App., 36 S.W.2d 994, and Id., Tex.Com.App., 39 S.W.2d 1111, cited and relied upon by appellants, appears to be contra, but see 13 Texas Law Review, pp. 278 and 284; 30 Columbia Law Review, p. 411.

■ Although the appellees were not holders in due course, there is no evidence tending to show that they had anything to do with the execution of the note and guaranty, or that they had any knowledge or notice of the circumstances under which it is shown to have been executed. When the note was delivered it was a completed negotiable instrument. It follows, therefore, as the trial court held, that the fraud of the maker whereby the guarantors were induced to sign will not relieve the guarantors of liability to the payee who had no notice of the fraud at the time they ac-cepted the note for a valuable consideration. See Farmers' State Bank of Afton v. Mowry, 107 Okl. 275, 232 P. 26; Potts v. First State National Bank of Talihina, 51 Okl. 162, 151 P. 859; J. R. Watkins Medical Co. of Winona, Minn., v. Coombes, 66 Okl. 126, 166 P. 1072. This rule is based upon the maxim that where one of two innocent persons must suffer because of the acts of a third person, the one who enabled the third person to occasion the loss, must sustain it. See Morris v. Packard Dallas Co., 184 Okl. 277, 86 P.2d 779. Moreover, Section 7, Title 48 O.S.A., Section 196, N.I.L. provides that the rules of law merchant shall govern in cases not specifically provided for in the N.I.L., and under the law merchant, an innocent person may recover against one who signed a contract in blank and delivered it to a third party who filled up the blanks in a manner different from or in excess of his authority. Vol. 8 Amer. Juris. Bills and Notes, Sec. 418, note 14, and the cases cited there.

■■ With respect to the plea of total or partial consideration, it need only be said that the note was given by Curd in consideration of the agreed purchase price of the preferred stock in the sum of $37,000. The stock had a face value of $110,000 and Curd testified that at the time he purchased the stock and executed the note therefor, he believed that it was worth what he paid for it. The stock was delivered as agreed and it constituted a valid consideration for the note. Since the guaranty was entered into contemporaneously with the original obligation and formed with that obligation a part of the consideration to the guarantee, no other consideration need exist for the execution of the guaranty contract. Section 323, Title 15 O.S.A.; Yount v. Bank of Commerce, 172 Okl. 65, 44 P.2d 874; Barnett v. Kennedy, 185 Okl. 409, 92 P.2d 963.

We come now to the question whether there was an alteration or change in the original obligation guaranteed, so as to exonerate the appellants as guarantors.

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any

respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." Section 338, Title 15 O.S.A.

■ "A guarantor has a right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge if those terms are not observed. In contracts of guaranty, any material departure from the contract's terms by the guarantee and the other party releases the guarantor. Schmidt v. McKenzie, 215 Minn. 1, 9 N.W.2d 1; Hughes v. Straus-Frank, Co., Tex.Civ.App., 127 S.W.2d 582, affirmed 138 Tex. 50, 156 S.W.2d 519; Rodriguez v. Shacklett, Tex.Civ.App., 144 S.W.2d 296; Robertson v. Southwestern Co., 136 Ark. 417, 206 S.W. 755; Atlas Assur. Co. v. Lawrence, 8 Cir., 34 F.2d 401; Logan v. Clark, 4 Cir., 63 F.2d 973; Stearns Law of Suretyship, 4th Ed., pp. 98 and 99, Section 72.

Appellants point to a contract between the maker and appellees, as payees, under which they say the obligation of the note was extended beyond the maturity date and the payment thereof accelerated. "A number of days after the execution of the note" and without the knowledge or consent of Rabon and Simon, appellees and Curd entered into a written contract concerning the sale and delivery of the preferred stock in the Producers Lumber Company for which the note was given. It recited the ownership of the preferred stock by the appellees and Curd's desire to purchase the same. It was agreed that $6,000 of the stock should be sold and delivered on or before December 10, 1940, for which Curd should pay $2,000; that $24,000 in stock should be sold and delivered on or before December 10, 1941, for which Curd should pay $8,000; that $24,000 in stock should be sold and delivered on or before December 10, 1942 for which Curd should pay $8,000; that $24,000 of stock should be sold and delivered on or before December 10, 1943 for which Curd should pay $8,000; that $24,000 in stock should be sold and delivered on or before December 10, 1944 for which Curd should pay $8,000; that $8,000 in stock should be sold and delivered on or before December 10, 1945, for which Curd should pay $3,000 in cash. It further provided that the note of $37,000 executed by Curd, due by its terms July 1, 1945, did not represent the total obligation for the purchase price of the stock; that the total obligation was represented by the contract and that the note was given as further security on the part of Curd to carry out the terms of the contract.

■ The obligation of the note was to pay the sum of $37,000 with interest semi-annually on or before July 1, 1945. Simon and Rabon each guaranteed the payment of the amount set opposite their names ($18,-500) on or before July 1, 1945, only if Curd was in default on the date of maturity. It is thus manifestly plain that the original obligation of the note was changed by the terms of the contract, to require the maker to partially discharge the obligations thereof, before they were due under the terms of the note and also extended the time for payment beyond the maturity date. This is not a continuing guaranty, intended to cover future transactions, as in Hazzard v. General Tire & Rubber Co., 181 Okl. 484, 76 P.2d 257. The appellees answer that the contract was entered into merely for income tax purposes; that it is without consideration, and in any event, a contemporaneous trust agreement, wherein the stock in question was delivered to a trustee for the performance of the contract expressly provided that regardless of the provisions of the contract "the obligation shall not be in default except as provided for in said note".

■ Of course, the purpose for which the contract was entered into is immaterial, if by its terms it operated to change or alter the maker's obligation under the note. There was a valid consideration for the contract. It was a detriment to Curd to pay the accelerated amount under the contract before it would have been due under the terms of the note and it was a benefit to appellees to receive such payments. It was a detriment to appellees to delay the final discharge of the obligation under the note five months beyond the date of maturity; the extension was a benefit to the maker of the note. It may be that the contract, when considered with the contemporaneous trust agreement, left the obligation, of the note

unaltered and unchanged with respect to defalcation before maturity. But, even so, the trust agreement did not purport to revive or reinstate the obligation of the note to pay on maturity date. On the contrary the provisions of the contract with respect to the extension of the maturity date of the obligation remained in full force and effect, and thus operated to extend the date of payment of the obligation of the note for approximately five and one half months beyond the stipulated maturity date.

 By the terms of the note the "makers, sureties and endorsers" agreed to all extensions and partial payments before and after maturity without prejudice to the holder. But, as we have said, appellants here are guarantors. Under the contract of guaranty they waived no defenses and are therefore entitled to invoke all defenses available to them under the law of guaranty. The obligation they guaranteed was changed without their knowledge or consent and we hold that such change operated to exonerate them of liability under their guaranty contract.

The judgment is reversed.

PHILLIPS, Circuit Judge (dissenting).

The majority opinion reverses the judgment below upon an issue not pleaded in the answer and not raised at the trial, and presented for the first time on a motion to vacate the judgment below and enter a judgment for Rabon and Simon.

While the written documents, that is, the note, the declaration of trust, and the contract, were dated July 1, 1940, the transaction was actually closed and the note and stock delivered on September 30, 1940. On the latter date, Ross T. Warner executed a declaration of trust which recited the purchase of the preferred stock by Curd, the promissory note executed by Curd, as principal, and endorsed by Rabon and Simon, and the delivery of the preferred stock to Warner, as trustee. It provided that, if and when Curd should pay such note in full, and such endorsers had been released from all liability thereon, the trustee should transfer and deliver the stock to Curd. It recited that it was contemplated that Curd would pay off and satisfy such "obligation"

by payments over a five-year period and provided that, in the event such payments should be made, the trustees should assign and deliver to Curd shares of such stock as follows:

For first $2,000............... 60 shares
For next $8,000............... 240 shares
For next $8,000............... 240 shares
For next $8,000............... 240 shares
For next $8,000............... 240 shares
For next $3,000............... 80 shares

It further provided that, in the event any portion of such obligation should remain outstanding at the expiration of the five-year period, the shares of stock remaining in the hands of the trustee should be assigned and transferred to Rabon and Simon on the payment by them in full of the balance of such obligation.

Contemporaneously with the delivery of the note and stock, H. W. Putnam, Jr., John Putnam, and Jones executed and delivered to Warner a letter, which was approved in writing by Curd, reading in part as follows:

"This is to advise that we have today sold to Mr. O. L. Curd Eleven Hundred (1100) shares, amounting to One Hundred Ten Thousand Dollars ($110,000.00) par value of the preferred stock of the Producers Lumber Company, for a consideration of Thirty-seven Thousand Dollars ($37,000.00). Mr. Curd has given us his note for said sum of Thirty-seven Thousand Dollars ($37,000.00), payable in five years, and endorsed by E. R. Rabon and H. A. Simon.

"We have this day, also, entered into a contract with Mr. Curd, *providing a suggested manner for the payment of said obligation and for the delivery of said stock, a copy of which is attached hereto.* Regardless, however, of the provisions of this contract, we agree that the obligation shall not be in default except as provided for in said note.

"We are assigning the said Eleven Hundred (1100) shares of stock to you as Trustee and delivering the same over to you herewith. We ask that you have the ownership of this stock transferred on the books of the company from us to you, as

said Trustee. Upon payments made by Mr. Curd on the above obligation, you will please assign, transfer and deliver over to him the pro rata number of the above shares of stock, as set out in the attached contract; and, upon payment of said total obligation at any time within the five-year period, as provided in said note, you are authorized and directed to assign, transfer and deliver all of said shares of stock over to Mr. Curd, or as he may direct, the same to be free and clear of any and all claims or demands whatsoever on our part.

"In the event any portion of the above obligation shall remain outstanding and unpaid by said O. L. Curd at the expiration of said five-year period, the shares of said stock then remaining in your hands as such trustee, shall be delivered over pro rata to the endorsers of said note upon payment by them of the balance of said obligation to us." (Italics mine.)

While the evidence shows that the contract was executed at a subsequent date, the trust agreement and the letter show clearly that its terms had been agreed to and were in the minds of the parties when the declaration of trust and letter were executed and when the note and the stock were delivered. A copy of the contract was attached to the letter. Moreover, the contract refers to the note and recites, "that said note was given as further security on the part of the second party [Curd] to carry out the terms of this written obligation."

The testimony established that the arrangement for installment payments was entered into solely to effect savings in income tax liability.

It is clear from the recitals in the letter and the contract that Curd was not obligated to make the payments otherwise than in accordance with the terms of the note and that he would not be in default unless, at the maturity of the note, the whole or some portion thereof remained unpaid.

It is well settled that in order for an agreement between the holder and principal debtor to constitute a modification which will discharge the party secondarily liable, such agreement must be founded on a valid consideration, and must be otherwise valid and enforceable,[1] and must manifest an intent, by the parties, to effect a modification.[2]

Here, it seems clear to me that the trial court was warranted in concluding from the evidence that the parties did not intend by the contract to in anywise alter or modify the terms of the note or extend the time for the payment thereof.

We must assume from the fact that the trial court denied the motion to vacate the judgment, it concluded that the defense raised by the motion came too late or that, under the evidence, the parties did not intend to in anywise modify the terms of the note.

For the reasons indicated, I respectfully dissent.

---

[1] Stetler v. Boling, 52 Okl. 214, 152 P. 452, 454; Note, 85 A.L.R. 327.

[2] Berkowitz v. Kasparewicz, 121 Conn. 140, 183 A. 693, 696, 104 A.L.R. 1326.