**FORD MOTOR CREDIT COMPANY,**
Plaintiff-Appellant,

v.

**R. Kenneth MILBURN and Jane B. Milburn, Husband and Wife; and Bobby J. Rogers and Marilyn A. Rogers, Husband and Wife, Defendants-Appellees.**

No. 77–1935.

United States Court of Appeals,
Tenth Circuit.

Argued March 14, 1979.

Decided Feb. 8, 1980.

Rehearing Denied April 9, 1980.

Thomas G. Marsh of Dyer, Powers, Marsh, Turner & Powers, Tulsa, Okl., for plaintiff-appellant.

Robert K. McCune, Oklahoma City (Gene Stipe, Oklahoma City, with him on the brief), of Stipe, Gossett, Stipe & Harper, Oklahoma City, Okl., for defendant-appellee Jane B. Milburn.

W. Rodney DeVilliers, Sr., of DeVilliers & DeVilliers, Oklahoma City, Okl., submitted a brief for defendants-appellees Bobby J. Rogers and Marilyn A. Rogers.

Before SETH, Chief Judge, LOGAN, Circuit Judge and MILLER, Judge *.

LOGAN, Circuit Judge.

This is an appeal by Ford Motor Credit Company (Ford Credit) urging reversal of the trial court's denial of Ford Credit's motions for judgment notwithstanding the verdicts. Ford Credit brought a diversity action against R. Kenneth Milburn, Jane B. Milburn, Bobby J. Rogers and Marilyn A. Rogers to recover on personal guaranties of indebtedness owed to Ford Credit by Ken Milburn Ford, Inc. The trial court directed a verdict in favor of Ford Credit and against Kenneth Milburn, but sent the case to the jury as to the other defendants. After the jury reached verdicts exonerating Jane Milburn and the Rogerses of any liability, Ford Credit moved for judgment notwithstanding each verdict. The trial court

* Of the United States Court of Customs and Patent Appeals, sitting by designation.

denied the motions; the issues on appeal concern the propriety of these rulings.

It is undisputed that on November 26, 1968, Ford Credit and Ken Milburn Ford, Inc., (the dealership or Dealer), of which Kenneth Milburn was then the sole shareholder, entered into an agreement whereby Ford Credit made a $150,000 capital loan to Dealer. In addition to other contracting documents, a continuing guaranty was executed by Kenneth Milburn and Jane Milburn. The written guaranty provided that each personally guaranteed payment of "all Dealer's present and future obligations to" Ford Credit.

In 1971 the dealership's doors were locked by the Internal Revenue Service for failure to pay withholding taxes, and Ford Credit suspended its credit line. To reopen, the Dealer sought and acquired a loan from the First National Bank of Davis, Oklahoma, guaranteed by the Small Business Administration. In connection with this loan Ford Credit reopened a $300,000 line of credit to the dealership, and Bobby Rogers and Marilyn Rogers signed a continuing guaranty, identical to that previously signed by the Milburns, personally guaranteeing the dealership's obligations to Ford Credit.

Operations then resumed; but the dealership's financial situation apparently deteriorated. By letters of July 12, 1974, Ford Credit advised each of the guarantors that payment of $403,693.10 was demanded from Dealer and from them as guarantors of Dealer's obligations to Ford Credit. On July 1, 1975, Dealer filed a Chapter X Reorganization proceeding and was thereafter adjudicated a bankrupt. At the time of trial the remaining indebtedness to Ford Credit was $117,928.25, the amount Ford Credit sought to obtain from the individual guarantors.

In reviewing the trial court's denial of the motions for judgment n. o. v., we are mindful of the limitations upon judicial intrusion into the jury's realm as fact finder. We must view the evidence and inferences therefrom in the light most favorable to the parties for whom the jury found. *Barnett v. Life Ins. Co. of the Southwest,* 562 F.2d 15, 17 (10th Cir. 1977). The trial court's denial of the motions is error only if "there is no evidence or dispute or the evidence, although in conflict, is of such a conclusive nature that if a verdict were reached in favor of the party, judicial discretion would require that it be set aside." *Continental Oil Co. v. Natrona Serv., Inc.,* 588 F.2d 792, 800 (10th Cir. 1978).

In this case, it is undisputed that defendants-appellees each signed the continuing guaranty and that Dealer owed Ford Credit $117,928.25. Therefore, unless defendants-appellees interposed defensive evidence sufficient to create a jury question, the trial court erred in its rulings.

I

Jane Milburn asserted a defense of fraud in the inducement of the guaranty contract. Viewed most favorably to her, the evidence shows that on November 26, 1968, Robert C. Bailey, an attorney representing Ford Credit, James Waugaman, then Branch Manager of Ford Credit, T. Fred Collins, an attorney representing Kenneth Milburn and the dealership, and Kenneth Milburn, met in Collins' office in Ardmore, Oklahoma, for the purpose of closing the $150,000 capital loan to the dealership. Much of the day was spent curing a real estate title problem; the actual closing occurred in the afternoon. In connection with the loan the Milburns signed the continuing guaranty. The evidence shows that Jane Milburn was not present in the office except for an appearance of approximately five minutes to sign the guaranty. At trial, Mrs. Milburn related the circumstances surrounding her signing as follows:

A I went down to Fred Collins' office, an attorney in Ardmore, and present were Jim Waugaman with Ford Motor Credit and an attorney from Oklahoma City, representing Ford Motor Credit, and Mr. Collins and my husband. And they laid all these books out in front of me and I said, "Now, look, gentlemen, before I sign anything I want it made perfectly clear that I am not obligating . . . myself for anything but this one loan and

this one loan only," and I looked at Mr. Waugaman and I said, "Is that right, Jim?" and he said, "It's all right for you to sign, that's all right."

. . . . .

Q What did Mr. Waugaman tell you concerning your liabilities if you signed that document, before you signed it?

. . . . .

A He said, "It's all right for you to sign it. Go ahead and sign it. You are just pledging yourself for this one loan."

Ken Milburn supported her testimony in the following manner:

Q Would you tell the Court and jury what your wife—what Mr. Waugaman told your wife there that day before she would sign the papers in this blue folder.

. . . . .

A And she said, "Now, Jim, I want you and everyone here to understand that I am signing for this $150,000 loan and this $150,000 loan only."

Q And what did Mr. Waugaman tell her?

A Mr. Waugaman said, "Jane, or Mrs. Milburn"—probably called her Mrs. Milburn—"we understand and it's perfectly all right for you to go ahead and sign."

Q All right.

A And everyone else in attendance nodded their head in agreement.

Mrs. Milburn thus claims that Ford Credit, through Waugaman and Bailey, fraudulently induced her into guaranteeing all present and future obligations of the dealership by misrepresenting the extent of her obligation under the guaranty agreement notwithstanding the clarity of the agreement as a continuing guaranty.

■ We are bound to follow Oklahoma law here. That state recognizes the rule that misrepresentations of law do not form the predicate for an action based on fraud. *E. g., Nesbitt v. Home Federal Sav. & Loan Ass'n,* 440 P.2d 738 (Okl.1968); *Gibson v. Mendenhall,* 203 Okl. 558, 224 P.2d 251 (1950). Under the Oklahoma decisions we think Waugaman's statement clearly would

be regarded as a misrepresentation of law. *See First Nat'l Bank & Trust Co. v. Muskogee Discount House,* 382 P.2d 137 (Okl. 1963).

There are exceptions to this rule, however, *see id.,* 382 P.2d at 139, and one arguably applies to this case. If the person making the misrepresentation "has superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in a situation to become informed, the injured party is entitled to relief . . . ." *White v. Harrigan,* 77 Okl. 123, 186 P. 224, syl. 1 (1919). *See Nesbitt v. Home Federal Sav. & Loan Ass'n,* 440 P.2d 738, 743 (Okl.1968) (recognizing the rule and the exception, but holding facts did not support claim to exception).

Even if we assume that Jane Milburn was generally inexperienced and ignorant concerning business affairs and the nature of a continuing guaranty, the exception would not apply here if she was in a position to become informed through her attorney. The only evidence supporting her assertion that she was not represented by an attorney at the time she signed the guaranty is the following testimony of Collins:

Q And, Mr. Collins, before we get into the documents, let me ask you, sir, during 1968 and years prior, did you have occasion to be the attorney for the Ken Milburn Ford, Inc.?

A Yes, sir.

Q And have you, during that time also, represented R. Kenneth Milburn?

A Yes, sir.

Q And were you also not the attorney, from time to time, for Jane B. Milburn?

A Yes, sir.

Q And she is the wife of Kenneth Milburn?

A Yes, sir.

Q All right. Directing your attention to November of 1968, specifically November 26, 1968, did you have occasion to participate in a capital loan closing?

A Yes, sir.

Q In your office?

A   Yes, sir.

Q   Who were you representing, Mr. Collins?

A   I was representing Ken Milburn Ford and Ken Milburn and I can't say that I was representing Jane B. Milburn, although Mr. Milburn employed me. She was with Mr. Milburn right through this and those papers were filed—were prepared so that Mrs. Milburn was to sign them.

Q   Yes, sir. And did you represent Ken Milburn at the closing?

A   Yes, sir.

Q   And I will ask you one more time, Mr. Collins, were you not also representing Mrs. Milburn at this closing?

.        .        .        .        .

A   I can't say that I was employed by Mrs. Milburn per se to represent her. I took the position that I was representing Mr. Milburn; that Ford Motor—that Ken Milburn Ford, Inc. and Mrs. Milburn's name was there—her name had been typed in on the instruments for her to sign. I can't say that she employed me, such as Mr. Milburn had employed me.

Q   Were you representing Mrs. Milburn at the closing?

.        .        .        .        .

A   Well, I don't know that I can answer the question any better than what I have.

Q   (By Mr. Marsh) Did you assist Mrs. Milburn in the execution of the document?

A   I asked Mrs. Milburn to sign the documents and I showed her where she was to sign.

Q   Yes, sir. And you knew that her presence was required at the capital loan closing, did you not?

A   Yes, sir.

.        .        .        .        .

Q   (By Mr. Marsh) You knew that her presence was required at the closing?

A   Yes, sir.

Q   And did Mr. Bailey contact you prior to the closing and have conversation with you about the conditions of the loan?

A   Yes.

Q   And did he ask you to have available these people at the closing?

A   Yes, sir.

Q   And did you ask Mr. Milburn and Mrs. Milburn to come to your office?

A   No. I asked Mr. Milburn to come to my office.

Q   Did you ask him to bring Mrs. Milburn?

A   Yes.

Q   All right. And was it—

A   I said it would be necessary for Mrs. Milburn to be there to sign the papers.

Collins also testified that Jane Milburn had never directly paid him a fee or expressly asked him to represent her.

The evidence to the contrary included a letter dated August 9, 1976, sent to Ford Credit's attorneys wherein Collins stated, "As you know, at the time of the transaction to which you refer and subsequently, I represented Mr. and Mrs. Milburn and also Ken Milburn Ford, Inc." More importantly, Jane Milburn made the following statements under oath in a pretrial deposition, offered into evidence at the trial as an admission of a party opponent:

Question: "Can you tell me, Mrs. Milburn, where you signed this document?" Answer: "In Fred Collins' office in Ardmore."

Question: "Who is Fred Collins?" Answer: "He is an attorney at Ardmore."

Question: "Who did Mr. Collins represent?" Answer: "Mr. Collins represented Mr. Milburn."

Question: "Was he also representing you?" Answer: "Yes."

.        .        .        .        .

Question: "I see. All right. Now, during all of those proceedings then, the signing of the capital documents, Mr. Collins was present, was he not?" Answer: "Yes, he was."

Question: "And did he represent you as your attorney?" Answer: "Yes."

Question: "And he represented Mr. Milburn?" Answer: "Yes."

Question: "And he represented Ken Milburn Ford?" Answer: "Yes."

Question, beginning on line 12, page 24: "Was that your purpose in employing Mr. Collins, in order to enable him to examine the document and determine that they were in proper order?" Answer: "Mr. Collins is our attorney in Ardmore."

■ An appellate court does not weigh evidence or consider reliability of testimony in this context. Nevertheless, we must take as true "testimony concerning a simple fact capable of contradiction, not incredible, and standing uncontradicted, unimpeached and in no way discredited by cross examination . . . ." *Chicago, Rock Island & Pacific Ry. v. Howell*, 401 F.2d 752, 754 (10th Cir. 1968). *See* 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 2524 (1971). Mrs. Milburn's deposition testimony clearly admits the attorney-client relationship between Collins and herself. She did not explain or contradict it when she took the stand. Collins' testimony does not contradict her statements; in essence he stated that upon reflection he was not sure whether she was then his client. Collins' testimony, in spite of the impeaching letter, could reasonably support the contrary inference if it stood alone, but in view of Jane Milburn's admission, we must conclude the jury was not entitled to draw that inference.

■ The record thus shows Mrs. Milburn was represented by counsel when she signed the continuing guaranty, and therefore had the opportunity to become informed. That Collins did not inform her of the wording of the guaranty, or perhaps misinformed her by nodding in agreement with Waugaman's statements, is not relevant to showing fraud by Ford Credit. We therefore hold the trial court erred in refusing to grant judgment n. o. v. against Jane Milburn. Because of our disposition of this issue we need not address Ford Credit's other contentions.

II

Ford Credit also urges reversal of the trial court's ruling leaving in effect the jury verdicts in favor of Bobby J. Rogers and Marilyn A. Rogers. It argues the jury could not conclude the Rogerses' defenses of failure of consideration and exoneration were meritorious. We agree. We treat first the consideration question.

Viewed most favorably to the Rogerses, the evidence shows that during or prior to 1971 the dealership's credit line with Ford Credit was suspended. To revive the dealership, Kenneth and Jane Milburn sought a loan from the First National Bank of Davis, Oklahoma, to be guaranteed by the Small Business Administration (SBA). The loan was made and used to retire the portion of 1968 capital loan still owed to Ford Credit. Before making the loan, the bank or the SBA required Ford Credit to reopen a $300,000 line of credit running to the dealership, which it did. But before reopening the credit line, Ford Credit secured from the Rogerses a continuing guaranty, which recites in pertinent part:

For and in consideration of $1.00 and other good and valuable considerations paid by you to each of us, the receipt and sufficiency of which is each hereby acknowledged, and to induce you to make loans to and/or make advances under your Wholesale Plan to, and to purchase or otherwise acquire retail instalment sale contracts, conditional sale contracts, chattle [sic] mortgages or other security instruments, *or to otherwise extend credit to or do business with* [the dealership], . . . each of the undersigned Guarantors hereby, jointly and severally, and unconditionally, guaranties to [Ford Credit], . . . that the dealer will fully, promptly and faithfully perform, pay and discharge all Dealer's present and future obligations to [Ford Credit] . . . .

(Emphasis added.) Neither Bobby nor Marilyn Rogers were told by Ford Credit that the reopening of the credit line was condi-

tioned upon the execution of the guaranty. Ford Credit here seeks repayment from them of the loans it made to the dealership under the reinstated Wholesale Plan.

■ Oklahoma law provides that a written contract is presumptive evidence of consideration, and the Rogerses bear the burden of proving want of consideration. *See* Okla.Stat.Ann. tit. 15, §§ 114, 115 (West 1972). The Rogerses contend that their promises to pay existing and future debt were not made contemporaneously with the contracts creating those obligations between Ford Credit and the dealership; therefore, the absence of new consideration passing to them or to the debtor nullifies the guaranty. They rely upon Okla.Stat.Ann. tit. 15, § 323 (West 1966), which provides:

> Where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation.

This statute is Oklahoma's codification, in the context of guaranties, of the rule requiring new consideration for the promise to pay an existing obligation. *See* generally 1 A. Corbin on Contracts § 213 (1963).

■ The reopening of the credit line, however, is sufficient to support the guaranty. There was no evidence before the jury to suggest that Ford Credit was already obligated to do this. The record shows an extension of future credit in consideration of a promise of guaranty. It is settled law in Oklahoma that extension of future credit to the principal debtor in reliance upon a guaranty is sufficient consideration for the contract of guaranty concerning both past and future obligations, even though the benefit to the debtor constitutes the whole consideration. *Penner v. International Harvester Co.*, 171 Okl. 41, 41 P.2d 843 (1935); *Maney v. Cherry*, 170 Okl. 469, 41 P.2d 82 (1935); *W. T. Rawleigh Co. v. Walker*, 117 Okl. 256, 246 P. 417 (1926); *Gordon v. W. T. Rawleigh Co.*, 117 Okl. 235, 245 P. 825 (1926), *appeal dismissed and cert. denied*, 275 U.S. 506, 48 S.Ct. 157, 72 L.Ed. 397 (1927).

The Rogerses testified that they were not informed by Ford Credit their guaranty contract would induce the reopening of the credit line. But it is not necessary that they knew specifically of the reopening of this credit line, since the terms of the guaranty contract clearly encompass that extension of future credit. Thus, the jury was not entitled to find for the Rogerses on this basis.

■ The Rogerses also assert the defense of exoneration pursuant to Okla.Stat. Ann. tit. 15, § 338 (West 1966), which provides,

> A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal, is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

They contend the evidence shows an alteration of the dealership's original obligation, because Ford Credit extended a different credit line to the dealership to finance sales of boats, motor homes, and trailers without obtaining their consent. Assuming the record supports the factual contentions here,[1]

---

1. The trial judge, on' at least three occasions, sustained objections to the Rogerses' offers to put into evidence the financing agreements that increased the obligations of the dealership. The trial court reasoned that the parol evidence rule barred this evidence since the continuing guaranty by its terms allowed Ford Credit to extend further credit without notice to the guarantors. But some testimony concerning the existence of the additional arrangements was admitted and the court instructed the jury on the exoneration issue. Because Ford Credit does not complain of these actions, we assume the obligations were created.

we nevertheless hold the Rogerses were not entitled to prevail on this defense.

The guaranty contract contains the Rogerses' promises to pay all existing and future debts; the recital of consideration expressly refers to future dealings between Ford Credit and the dealership in addition to automobile floor planning. In addition, the Rogerses waived the right to notice of transactions between Ford Credit and the dealership. The provisions thus unambiguously provide the necessary consent required by section 338 in the context of a continuing guaranty. *See Hazzard v. General Tire & Rubber Co.*, 181 Okl. 484, 76 P.2d 257 (1937); *Penner v. International Harvester Co.*, 171 Okl. 41, 41 P.2d 843, 844 (1935). We conclude the jury was not entitled to find in favor of Bobby or Marilyn Rogers on this theory.

The judgment is reversed with direction to enter judgment in favor of Ford Credit against all three defendants-appellees.