951 F.2d 1260
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED SIDING SUPPLY, an Oklahoma corporation, Plaintiff-Appellee,
v.
GRADY BROTHERS, INC., a Missouri corporation; Jack Hoke, Defendants,
and
Randy Grady, Defendant-Appellant.
 No. 91-5040.
 United States Court of Appeals, Tenth Circuit.
 Dec. 13, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant-appellant Randy Grady (Grady) appeals from an Order of a United States magistrate judge granting summary judgment against him and in favor of Plaintiff United Siding Supply, Inc., (United Siding) based on a "Personal Guarantee and Suretyship Agreement" (personal guarantee) executed by Grady.[1] For the reasons set forth below, we affirm.[2]
 
 
 3
 This court reviews a grant of summary judgment under the same standard applied by the magistrate judge. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The factual record must be viewed in the light most favorable to the party opposing summary judgment. Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir.1988).
 
 
 4
 The facts pertinent to this appeal are undisputed. Briefly, on July 15, 1985, Grady Brothers, Inc. (Grady Bros.) executed a "Credit Application" allowing it to receive supplies on account from United Siding. At the same time, Grady executed a personal guarantee to assure payment of any indebtedness due from Grady Bros. to United Siding.
 
 
 5
 On or about July 20, 1988, Grady Bros. was purchased by GSB Investments, Inc. (GSB Investments). On May 23, 1989, Jack Hoke, President of Grady Bros. and GSB Investments, executed a new credit application and guarantee agreement in favor of United Siding. Between May 2, 1988, and July 31, 1989, United Siding, at Grady Bros.'s special request, delivered to Grady Bros. certain building supplies, goods, and merchandise valued at $106,258.48. Grady Bros. accepted delivery of these goods, but failed to pay for them. At sometime after the transfer of Grady Bros.'s shares to GBS Investments, Hoke secured an agreement with United Siding whereby United Siding would accept payment of $5,000 per month on Grady Bros.'s past-due account.
 
 
 6
 United Siding eventually brought this action against Grady, Hoke, and Grady Bros. claiming that Grady Bros. is indebted to it in the amount of $106,258.48 plus interest. United Siding sought to hold Grady and Hoke liable for Grady Bros.'s debt on the basis of their separate personal guarantees. This appeal is concerned only with Grady's liability.
 
 
 7
 Relying on Oklahoma law, Grady offers three arguments to avoid liability. First, Grady contends that he is not liable because he signed the personal guarantee using the name "Randy Grady Vice-President." According to Grady, writing "Vice-President" after his signature means either he cannot be held personally liable for a corporate debt or there is an ambiguity in his personal guarantee which must be construed against United Siding.
 
 
 8
 Like the magistrate judge, we find no merit to these contentions. The identical issues were before this court in Ricker v. B-W Acceptance Corp., 349 F.2d 892 (10th Cir.1965). In Ricker, the trial court had granted summary judgment against defendant Ricker, who had signed a personal guarantee as president of a corporation. On appeal, this court affirmed, holding that Ricker's argument that he did not intend to obligate himself personally did not raise a genuine issue of material fact because the written guarantee was not ambiguous. Id. at 895. Construing the guarantee as binding only on the corporation and not Ricker would, in the view of this court, contradict the language of the guarantee. Id. at 895-96.
 
 
 9
 The same result is required under the facts of this case. The personal guarantee executed by Grady expressly differentiates the "undersigned ('Surety')" from the "debtor" and plainly shows that these terms refer to different entities or parties, namely, Grady, individually, and Grady Bros., respectively. Moreover, the fourth paragraph of the personal guarantee provides that the obligations of the undersigned shall be binding upon the undersigned's "heirs, personal representatives, successors and assigns." These are apt terms with respect to a natural person such as Grady but not a corporation like Grady Bros. Finally, interpreting the personal guarantee as merely Grady Bros.'s guarantee of its own obligations would render the personal guarantee superfluous. Accordingly, we agree with the magistrate judge that the addition of Grady's title in the personal guarantee merely identified Grady as a principal in Grady Bros. and does not limit his personal liability.
 
 
 10
 Grady next argues that as a guarantor, he was exonerated when the original agreement between Grady Bros. and United Siding was modified. This modification occurred, according to Grady, when United Siding made an agreement with Jack Hoke to accept payments of $5,000 per month in satisfaction of Grady Bros.'s past-due account. In support of his exoneration defense, Grady relies on Okla.Stat.Ann. tit. 15 § 338 (West 1988), which provides as follows:
 
 
 11
 A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.
 
 
 12
 We agree with the magistrate judge that Grady is not entitled to prevail on this defense. Grady's personal guarantee contains promises to pay all "present and future indebtedness" of Grady Bros. Moreover, the personal guarantee provides that Grady's liability is unaffected by "any compromise or other indulgence granted to [Grady Bros.]." These provisions provide the necessary consent required by section 338. Ford Motor Credit Co. v. Milburn, 615 F.2d 892, 899 (10th Cir.1980); Black v. O'Haver, 567 F.2d 361, 369 (10th Cir.1977), cert. denied, 435 U.S. 969 (1978). Contrary to Grady's assertion, section 338 does not require that he "waive his right to notice of changes in the terms of the indebtedness." The statute only requires that Grady consent to alteration of the original obligation of Grady Bros. Such consent was granted and, therefore, Grady's exoneration defense must fail.
 
 
 13
 As his final argument, Grady contends that the new credit application and personal guarantee executed on May 23, 1989, by Jack Hoke constituted a contract of novation which relieved him of liability. However, an essential element of novation is that there must be a release of all claims of liability against an original debtor on the old obligation, since it is possible for a creditor, accepting a new debtor as an additional debtor, to hold the original debtor still liable. See Fuller v. Stout, 166 P. 898, 899 (Okla.1917). Thus, a creditor's willingness to hold a new debtor liable is ineffective to constitute a novation unless there is a willingness to give up the original debtor. Id. In this case, Grady has not revealed any evidence of an agreement by United Siding to discharge him from his obligation. The new credit application and personal guarantee executed by Jack Hoke do not contain any language indicating an intent on the part of United Siding to extinguish Grady's obligation by substitution of a new agreement. Rather, it is apparent from the record that the form was executed by Jack Hoke to provide United Siding with an additional guarantee. In the absence of any evidence of an expressed or implied agreement by United Siding to extinguish Grady's obligation, his novation claim is unavailing.
 
 
 14
 Accordingly, the judgment of the magistrate judge is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The parties consented to proceed before a magistrate judge and to take any appeal directly to this court. See 28 U.S.C. § 636(c)
 
 
 [2]
 United Siding moved to dismiss this appeal as premature because, although the magistrate judge certified the order underlying this appeal as a final order under Fed.R.Civ.P. 54(b), the magistrate judge withdrew that certification shortly after Grady filed his notice of appeal. Since a final disposition of all remaining claims has been effected in the district court while this appeal was pending, we deny United Siding's motion and recognize our jurisdiction over the appeal. See Lewis v. B.F. Goodrich, Co., 850 F.2d 641, 645 (10th Cir.1988)